## CARL KRENZ v. ISAAC LEE.[1]

June 19, 1908.

Nos. 15,555—(89).

**Directed Verdict.**

The right to direct a verdict involves the duty to do so, and it should be exercised when, and only when, the evidence is so conclusive as to show that there are no bona fide questions of fact, and the court would be bound to grant a new trial if the case were submitted to the jury and a verdict rendered contrary to such evidence.

**Same.**

Rule applied, and *held*, that the issues tendered by the complaint in this case should have been submitted to the jury.

**Impeachment of Witness.**

The fact that a party gave testimony on the trial of a former action between the same parties contradicting his testimony on the trial of a later action does not conclude him as a question of law.

Action in the district court for Traverse county to recover $1,654.-90 paid by plaintiff upon certain promissory notes which, he alleged, he had given in payment of a gasolene engine and separator which were not as represented in the contract of sale. The case was tried before Flaherty, J., who directed the jury to return a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*Edward Rustad* and *Steidl & Houston,* for appellant.

*F. W. Murphy,* for respondent.

START, C. J.

The complaint alleged, in effect, that on August 4, 1905, the plaintiff entered into a contract with the defendant for the purchase from him of a steam threshing outfit, consisting of a gasolene engine and separator, with attachments, for the sum of $1,550; that the defendant warranted the outfit to do good work, and it was agreed between the parties that the plaintiff should take it on trial, and if it did not com-

[1] Reported in 116 N. W. 832.

ply with the warranty and work to his satisfaction there was to be no sale, and he could return it; that the plaintiff made his negotiable promissory notes for the purchase price of the outfit, payable to the order of the defendant, and delivered them to the defendant upon the express agreement that he should hold them, and not negotiate them, until the plaintiff could try the outfit, and if it did not work to his satisfaction it should be returned, and his notes surrendered to him; that the outfit did not comply with the warranty, did not work well, nor to his satisfaction, and he returned it to the defendant, and made a demand upon him for his notes, which was refused; and, further, that the defendant wrongfully negotiated the notes to a bona fide purchaser thereof, and the plaintiff was compelled to pay them.

The answer denied that the defendant ever sold the outfit to the plaintiff, and alleged, in effect, that the defendant, as agent, and not otherwise, of the manufacturers thereof, sold the engine for Bradley, Clark & Company, of Minneapolis, and the separator for the Belle City Manufacturing Company, of Racine Junction, Wisconsin, to the plaintiff, upon his written order therefor to each of them; that the respective orders contained the only contract, warranty, and representation made with reference either to the engine or separator; that they were delivered to the plaintiff pursuant to such orders, and that each complied in all respects with the representations and warranties contained in the order therefor; and, further, that the plaintiff gave his promissory notes in payment of the outfit so purchased of the respective manufacturers, but they were made payable to the order of the defendant to facilitate the negotiation thereof and the settlement with his principals for the purchase price thereof, and that he did negotiate them and turn over the proceeds thereof to his respective principals.

The reply admitted and alleged that, after the plaintiff and defendant had made their contract for the purchase and sale of the outfit, the plaintiff at the request of the defendant signed the orders alleged in the answer, but his signature thereto was procured by the fraud of the defendant, and, further, that the outfit was delivered to the plaintiff upon the contract alleged in the complaint, and not upon such orders.

On the trial of the issues, and. at the close of the evidence, the court directed a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

It is clear from the pleadings that the controlling issue was whether the plaintiff purchased the threshing outfit from the defendant, as alleged in the complaint, and that the notes for the purchase price thereof were conditionally delivered, as alleged. If there was evidence fairly tending to sustain a verdict in favor of the plaintiff on this issue, then it was error to direct a verdict for the defendant; otherwise not, for the plaintiff must stand or fall on this issue. The alleged purchase of the outfit by the plaintiff from the manufacturers, through the agency of the defendant, is a matter of great importance in considering the evidence relevant to the question whether the outfit was purchased of the defendant personally, for there was but one outfit and one purchase. If, therefore, the evidence is practically conclusive that the outfit was purchased from the manufacturers through the agency of the defendant, it would follow that the plaintiff could not recover against the defendant in this action, whatever rights, if any, he might have in an action against the manufacturers. On the other hand, if the defendant personally sold the outfit to the plaintiff, upon the terms and conditions alleged in the complaint, he had the right to return it and demand his notes, if upon a reasonable trial it did not work satisfactorily to him. McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846.

It may be conceded for the purposes of this appeal that, if the issue had been submitted to the jury and a verdict returned for the plaintiff, the trial judge would have been justified, in the exercise of his discretion, in granting a new trial. This, however, is not the test by which to determine whether it was error to direct a verdict. The right to direct a verdict involves the duty to do so, and it should be exercised when, and only when, the evidence is so conclusive as to show that there are no bona fide questions of fact, and the court would be bound to grant a new trial if the case were submitted to the jury and a verdict rendered contrary to such evidence. The credibility of witnesses is a question for the jury, except in extreme cases. Giermann v. St. Paul, M. & M. Ry. Co., 42 Minn. 5, 43 N. W. 483; Schei-

ber v. Chicago, St. P., M. & O. Ry. Co., 61 Minn. 499, 63 N. W. 1034; Dunnell, Pr. § 855.

We have considered the evidence, as disclosed by the record herein, in the light of this rule, and have reached the conclusion that the issues in this case should have been submitted to the jury. The testimony of the plaintiff tended to show that the parties entered into an oral contract for the purchase of the outfit by the plaintiff from the defendant personally, substantially upon the terms and conditions alleged in the complaint, and that the notes were conditionally delivered to the defendant, to be held by him until the plaintiff could try the outfit and ascertain whether it worked satisfactorily. The plaintiff was corroborated in several particulars by the testimony of his wife, his son, and a third party, and incidentally by the fact that the notes were made to the defendant.

The vulnerable point in the plaintiff's case is found in the written orders for the engine and separator. He admits that he signed them, and that he knew that the defendant sold farm machinery as agent for others and sometimes his own. If he signed the orders, knowing and understanding their contents, he cannot maintain this action against the defendant, for the reasons we have stated, and there is no occasion to determine whether the machinery complied with the warranty in the orders. The evidence shows that the plaintiff is a German and a farmer, unable either to read or write the English language. He testified to the effect that after the terms of the sale were agreed upon the defendant asked him to sign the orders; that they were not read to him in full, only as to the description of the outfit, nor were they explained to him; that he did not know that they were directed to the respective manufacturers of the outfit; that he signed them upon the defendant's statement that, if the outfit did not work satisfactorily, there would be no sale. The defendant left copies of the orders with the plaintiff, and some of the members of his family could read English. If the terms of the sale were in fact agreed to as claimed by the plaintiff, and the defendant then secured his signature to the orders under the circumstances testified to by the plaintiff, the evidence would be sufficient to take the case to the jury on the question whether his signature thereto was obtained by fraud. C. Aultman & Co.

v. Falkum, 51 Minn. 562, 53 N. W. 875; Alfred Shrimpton & Sons v. Philbrick, 53 Minn. 366, 55 N. W. 551.

The record is practically conclusive that the plaintiff, on a former action between the parties hereto, testified on cross-examination, in answer to questions by defendant's counsel, to the effect that he gave his notes for the machinery strictly in accordance with. the written orders; that he knew at the time he signed the orders that the defendant did not own the machinery ordered, but that he was acting as the agent of the manufacturers in the sale of the machinery; and further as follows:

"Q. And in making this transaction with you, and in taking your order and in delivering the machinery to you under these orders, that he merely acted as the agent for these two companies that manufactured the machinery and owned it—you knew that, didn't you? A. I thought he did. Q. You treated him as such all the way through, didn't you? A. Yes, sir. Q. You knew, then, as you have stated, that the machinery belonged to· the company from whom you ordered it, and Mr. Lee acted merely as their agent. Isn't that correct? A. Yes, sir. Q. You expected, of course, you would have to settle under your order for that machinery as you agreed? You understand that question, don't you? A. Yes, sir."

It would seem that, if the plaintiff understood these questions and answered them understandingly, they would constitute evidence tending quite forcibly to impeach his credibility, and to show that the contract for the sale of the outfit was as set forth in the written orders. The fact, however, that a party gave testimony on the trial of a former action between the same parties contradicting his testimony on the trial of a later action, does not conclude him as a question of law. In re Hess' Estate, 57 Minn. 282, 59 N. W. 193; Hahn v. Bettingen, 84 Minn. 512, 88 N. W. 10.

Many questions are discussed in the respective briefs of counsel that are not here referred to, but all matters urged which are relevant to the issues tendered by the complaint have been considered.

Order reversed, and new trial granted.