## J. L. VOUGHT v. LYNN A. PORTER.[1]

January 6, 1928.

No. 26,166.

**Verdict for plaintiff sustained—secondary evidence of contents of writing without notice to produce.**

The record discloses:

(1)  Sufficient evidence to sustain the verdict and a consideration for the alleged contract.

(2)  Evidence may be received as to the contents of a writing supposedly in the possession of the adverse party without serving a notice to produce where it is fairly made to appear at the trial that it could not have been produced if such notice had been served.

(3)  No error in permitting plaintiff to file an amended complaint.

Evidence, 22 C. J. p. 1062 n. 90.
Executors and Administrators, 24 C. J. p. 840 n. 61.
Vendor and Purchaser, 39 Cyc. p. 1357 n. 46.

Defendant, as executor of the estate of Ole Reierson, appealed from an order of the district court for Mower county, Peterson, J. denying his alternative motion for judgment or a new trial. Affirmed.

*G. W. W. Harden* and *Catherwood, Hughes & Alderson,* for appellant.

*F. G. Sasse* and *R. A. Dunnette,* for respondent.

WILSON, C. J.

Appeal from an order denying defendant's alternative motion for judgment non obstante or a new trial. The facts are stated in Vought v. Porter, 168 Minn. 43, 209 N. W. 642.

[1]Reported in 217 N. W. 352.

Plaintiff in 1919 purchased from Ole Reierson a farm. He paid $1,000 to apply on the contract. Later he paid another $1,000. He then contracted to sell the farm to one Stultz under a contract giving the purchaser possession. Stultz was unable to make payments, and a contract was made extending the time of payments but giving plaintiff the right of possession for a time. Plaintiff could not make his payments to Reierson. He desired his $2,000 back. Reierson desired the Stultz contract, wherein the farm was sold at an advance, and the right to possession held by plaintiff. Plaintiff claims Reierson promised to pay him the $2,000 for the surrender and abandonment of his contractual rights in the farm and for the possession thereof. Reierson is dead. Mr. Porter is the executor of his estate. Mr. Harden, the executor's attorney, tried this case at the first trial, and in the second Judge Catherwood was associated with him.

1. The court is now of the opinion that the record, which includes additional evidence, is sufficient to support the verdict. The abandonment of plaintiff's contractual rights in the farm and the surrender of the possession thereof was a sufficient consideration for Reierson's promise to repay the $2,000 to plaintiff.

2. Upon the first trial plaintiff from the witness stand told defendant's counsel that he thought he assigned the Stultz contract to Reierson. In the last trial he testified that the Stultz contract was given to Reierson. Over the objection that it was not the best evidence he testified that in connection therewith he signed a paper in the First State Bank which was given to Reierson. He was asked: "What was that document you signed there?" Over the objection that it was not the best evidence he answered: "It was a transfer of the contract to Stultz and $2,000 to pay me back." No notice to produce had been served. Before the answer was received plaintiff's counsel said to defendant's counsel: "Have you gentlemen that paper?" Judge Catherwood said: "I don't know of any paper. * * * I haven't heard of it." Apparently speaking to his associate, Mr. Harden, Judge Catherwood continued: "Just a moment. Is there any paper in the Reierson files or effects similar to what this witness has been describing?" Mr. Harden replied:

"I would say not. I have searched the records a dozen times." Then Judge Catherwood addressed Mr. Porter: "Do you know of any such paper?" Mr. Porter answered, "No."

The parties and their counsel lived in the same community. The trial was in October. The evidence was received early on the first day of the trial which ended late on the second day. Counsel had notice from the first trial of the fact that plaintiff thought he had signed such a paper. Naturally they would look for it. Yet the representative and his counsel disclaimed any knowledge of the existence or whereabouts of any such paper. Had it been in the possession of the estate it is fair to infer that they would have known it. Its existence is denied. The claim is a technical one. No claim is made showing prejudice. The case is quite different from what it would have been if defendant were now able to produce the paper demonstrating that it was not what the witness had supposed. Upon the statements of counsel and the executor the service of a notice to produce would have been useless. There could be no necessity for serving a notice to produce that for which counsel had "searched the records a dozen times" and that about which the executor had no knowledge. Especially is this true when its existence is denied. Such a record shows a sufficient foundation for secondary evidence. The authorities upon which defendant relies in this branch of the case have been adequately distinguished from the instant case in plaintiff's brief.

The statement, "and $2,000 to pay me back," was a conclusion of the witness. There was evidence in the case to support such a conclusion, of which this statement in a way was cumulative, and we are of the opinion that the trial court must be sustained in his conclusion that such error was harmless.

3. Defendant's counsel apparently were not very much surprised by the allegations of the amended complaint which was filed with the permission of the court. In this the court did not err. Detailed discussion thereof is not helpful. Such question rests largely in the discretion of the trial court and is to be granted liberally. 5 Dunnell, Minn. Dig. (2 ed.) §§ 7696, 7697.

Affirmed.